ORIGINAL

FILED
JAN 12 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| MCKING CONSULTING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 07-17 C<br><br>Judge: |

**MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Rule 65 of the United States Court of Federal Claims and 28 U.S.C. § 1491(b), McKing Consulting Corporation ("McKing") moves this Court for a preliminary injunction against Defendant United States, acting through the Human Resources and Services Administration ("HRSA") of the Department of Health and Human Services ("DHHS"), with respect to with respect to Solicitation No. TA SERVICES MCHB-DLA ("Solicitation") issued by the HRSA for technical assistance support services for the MCH/Head Start Regional Oral Health Expert Logistics Management Program. McKing requests this preliminary injunction until this Court can decide the merits of McKing's Complaint, filed herewith.

Dated: January 12, 2007

Respectfully submitted,

Jessica Abrahams
McKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

Counsel of Record for Plaintiff McKing Consulting Corporation

Of Counsel:

Shari L. Klevens
Jennifer M. Morrison
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500

DC:50455342.1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| MCKING CONSULTING CORPORATION,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | No. ______________<br>Judge: ______________ |

**MCKING CONSULTING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Jessica C. Abrahams
McKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

Counsel of Record for Plaintiff McKing Consulting Corporation

Of Counsel:

Shari L. Klevens
Jennifer M. Morrison
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500

Dated: January 12, 2007

McKing Consulting Corporation ("McKing") moves this Court for a preliminary injunction against Defendant United States, acting through the Human Resources and Services Administration ("HRSA") of the Department of Health and Human Services ("DHHS" or "Agency"), with respect to Solicitation No. TA SERVICES MCHB-DLA ("Solicitation"). This pre-award bid protest, pursuant to 28 U.S.C. § 1491(b) (2006), arises out of the Solicitation issued by the HRSA for technical assistance support services for the MCH/Head Start Regional Oral Health Expert Logistics Management Program.

McKing, the incumbent contractor, is protesting the Agency's decision to procure the follow-on Head Start technical assistance support services requirements through a small business set-aside. This is the Agency's third attempt to procure the relevant services; prior, aborted attempts have proved to be contrary to applicable statute and regulation. In the current version of the Solicitation, DHHS attempts yet again to circumvent the statutory requirement for full and open competition as set forth in the Competition in Contracting Act ("CICA"), 41 U.S.C. §§ 253 *et seq.*, and in FAR Parts 7 and 10.

## I. STATEMENT OF THE QUESTION

Is McKing entitled to a preliminary injunction based on HRSA's failure to comply with applicable statute and regulation in its issuance of the Solicitation?

## II. STATEMENT OF THE CASE

### A. The Incumbent Contract

McKing is a minority- and woman-owned professional services corporation certified to participate in the U.S. Small Business Administration's 8(a) program until May 18, 2010. McKing provides a variety of information technology and general and specialized management consulting and technical assistance support services to numerous Federal Government clients,

state governments, and private sector clients, both for profit and nonprofit. *See* J. Human Declaration at ¶ 3 (Ex. 1). McKing is the incumbent contractor. It has been providing technical assistance support services for the Maternal and Child Health Bureau's Head Start Regional Oral Health Experts (the exact same services that are the subject of this protest) pursuant to Contract No. HHSH240550061 for more than two years. McKing's incumbent contract has been extended beyond its expiration date until a successful re-procurement of the services can be conducted. *Id.* at ¶ 4.

**B. The Strategic Sourcing Initiative ("SSI")**

The SSI was issued by the Office of the Secretary for Administration and Management ("OSAM") of DHHS. The purpose of the policy is to reduce operational costs by using Blanket Purchase Agreements ("BPA") with vendors to receive discounts. The Government is a high-volume consumer of goods and services; as such, the SSI was implemented to lower prices paid by government agencies by using the purchasing leverage such mass quantities entail. *See* "Implementing Strategic Sourcing," Memorandum for Chief Acquisition Officers; Clay Johnson III; May 20, 2005;
http://www.whitehouse.gov/omb/procurement/comp_src/implementing_strategic_sourcing.pdf (last visited October 5, 2006) (Ex. A to Complaint).

The Office of Management and Budget ("OMB") has placed quotas on agencies to use strategic sourcing. OMB requires that each Chief Acquisition Officer ("CAO") "shall identify no fewer than three commodities that could be purchased more effectively and efficiently through the application of strategic sourcing." The OMB further requires that "annual strategic sourcing goals and objectives" are set, and "measures and reporting requirements" are made in order to ensure strategic sourcing goals are met. The purpose of the SSI, to reduce operational

costs, parallels the purposes of the Competition in Contracting Act ("CICA"), 41 U.S.C. § 253. The dual purposes of the full and open competitive procedures are: (1) to ensure that a procurement is open to all responsible sources, and (2) to provide the government with the opportunity to receive fair and reasonable prices. Ultimately, the result of full and open competition is "the lowest overall cost meeting government needs" by a responsible source. This goal is shared by the SSI. The SSI is not a replacement for or an exception to CICA. The requirements for full and open competition established by CICA are paramount.

**C. The First Contract Award**

In its initial attempt to procure the follow-on services to McKing's contract to provide technical assistance support services for the Maternal and Child Health Bureau's Head Start Regional Oral Health Experts, DHHS awarded improperly Contract No. HHSH240F5806 on September 28, 2006 to Professional and Scientific Associates, Inc. ("PSA"), pursuant to its events management BPA in order to assist DHHS in meeting its goals under the SSI. The procurement was restricted to four events management BPA holders, including PSA, and was not conducted pursuant to full and open competition, as required by CICA. *See* Ex. 1 at ¶ 7.

The terms of the underlying Solicitation No. 06-S240-0517-SS rendered McKing ineligible to bid on the contract, as the bidding was open only to BPA holders. *Id.* at ¶ 8. The solicitation was comprised of the same work currently being performed by McKing pursuant to Contract No. HHSH24055006I. Ex. 1 at ¶ 8.

On October 6, 2006, McKing protested the award to PSA at the U.S. Government Accountability Office ("GAO"). Ex. 1 at ¶ 10. After filing a motion with this Court to enjoin DHHS' override of the automatic CICA stay of performance, on November 22, 2006, McKing re-filed its protest against the award to PSA at the COFC. *Id*.On November 27, 2006, the

Government took corrective action, terminating the improper award to PSA. *Id.* There is no evidence whatsoever that the Agency completed the requisite advance planning and analysis to determine that SSI was the appropriate procurement mechanism for the follow-on work.

**D. DHHS' Second Attempt at a Follow-On Procurement**

On December 12, 2006, DHHS published a pre-solicitation notice in FedBizOpps describing its acquisition of the follow-on technical assistance support services for the Maternal and Child Health Bureau's Head Start Regional Oral Health Experts as a small business set-aside restricted to GSA MOBIS Schedule contract holders. (Ex. B to Complaint) and Ex. 1 at ¶ 11.

On December 13, 2006, McKing sent a letter to the HRSA Contracting Officer stating, among other things, that it was inappropriate to restrict the noticed procurement to small businesses, as doing so would prohibit McKing's participation. Ex. 1. at ¶ 12. McKing asserted that restricting competition in this way served neither the beneficiaries of the Head Start program, as McKing is unequivocally the contractor most qualified to perform the work, nor DHHS' socio-economic programmatic goals because it is not in DHHS' interest to restrict artificially the participation of minority-owned, 8(a), and woman-owned businesses in the procurement process. *Id.* McKing requested that HRSA reconsider its decision to set aside the above-referenced procurement for small business. *Id.* Subsequently, HRSA withdrew the pre-solicitation notice. *Id.*

**E. The Third Attempt at a Follow-On Procurement**

On December 22, 2006, HRSA published Request for Proposals No. TA SERVICES MCHB-DLC in FedBizOpps. *Id.*. at ¶ 13 and (Ex. C to Complaint). Unlike the previously withdrawn December 12, 2006 pre-solicitation notice, the Solicitation is not a FAR Part 8 procurement, but is instead a small business set-aside under NAICS Code 541611 and is being

conducted pursuant to FAR Part 15. Ex.1 at ¶ 13. The Solicitation calls for the award of a cost plus fixed fee contract for a seven month base period with four one-year options. (Ex. C to Complaint at B.2.) Proposals are to be evaluated on the basis of technical expertise and approach, past performance, and cost. *Id.* at Section M. DHHS reserved the right to make award without discussions. *Id.* at L.10. Offeror's are required to submit their proposals by 10:00 a.m. EST on January 22, 2007. *Id.* at L.1.3.

DHHS was aware prior to the issuance of the Solicitation that McKing would be ineligible to compete for work that was set aside for small business. The effect of this DHHS action, with respect to McKing, was the same as the effect of the original DHHS in awarding the contract to PSA. In each of these actions, McKing was ineligible to compete for the follow-on contract. Ex. 1 at ¶ 14. Given the Agency's failure to conduct the appropriate acquisition planning required by SSI, it is unlikely that DHHS conducted the requisite market research and other acquisition planning required by CICA prior to determining to conduct the follow-on procurement for the technical support services as a small business set-aside.

**ARGUMENT**

When considering a motion for preliminary injunctive relief, the court must weigh four factors: "(1) immediate and irreparable injury to the movant; (2) the movant's likelihood of success on the merits; (3) the public interest; and (4) the balance of hardship on all the parties." *Aeroplate Corp. v. United States*, 67 Fed. Cl. 1, 2 (2005) (quoting *United States Ass'n of Importers of Textiles & Apparel v. United States*, 413 F.3d 1344, 1347-48 (Fed. Cir. 2005)). No single factor is determinative, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir.

1993). Applying these factors to the circumstances of this case, McKing is entitled to injunctive relief.

### A. McKing Will Prevail on the Merits of its Complaint

The first factor requires the Court to consider whether McKing will prevail on the merits of its complaint. McKing asserts that it will succeed on the merits of its complaint for two reasons. First, DHHS' procurement method violated CICA. Second, DHHS' conduct was arbitrary and capricious.

#### 1. DHHS' Procurement Method Violated CICA

CICA requires the government to solicit proposals in a manner designed to achieve "full and open competition" in the procurement of government services. 41 U.S.C. § 253 et seq. Full and open competition means that "all responsible sources are permitted to submit sealed bids or competitive proposals on the procurement." 10 U.S.C. § 2302(3); 41 U.S.C. § 403(7). CICA was designed so that the government can obtain the lowest cost provider for the supplies or services it requires. *Matter of Western Roofing Services*, 70 Comp. Gen. 323, 4 (1991). Absent a statutory exemption, a federal agency must comply with CICA when soliciting and awarding a contract.

##### a. DHHS Failed to Perform Required Acquisition Planning

CICA generally requires that agencies engage in "full and open competition" when conducting government procurements, unless specific exceptions apply. 10 U.S.C. § 2304(c)(1). However, under no circumstances may noncompetitive procedures be used due to a lack of advance planning by contracting officials. 10 U.S.C. § 2304(f)(5)(A); *New Breed Leasing Corp.*, B-274201, B-274202, 96-2 CPD ¶ 202 (Nov. 26, 1996). GAO has recognized that, while the requirement for advance planning does not mean that such planning must be completely error-

free, *see e.g., Sprint Communications Co.*, B-262003.2, 96-1 CPD ¶ 24 (Jan. 25, 1996), as with all procurement actions taken by an agency, the advance planning required by CICA must be reasonable.

In enacting CICA, Congress explained: "Effective competition is predicated on advance procurement planning and an understanding of the marketplace." S. Rep. No. 50, 98th Cong., 2d Sess. 18 (1984), reprinted in 1984 U.S.C.C.A.N. 2191. The Senate Report also quoted with approval, the following testimony regarding the need for advance planning:

> Opportunities for obtaining or improving competition have often been lost because of untimely, faulty, or the total lack of advance procurement planning. Noncompetitive procurement or inadequate competition also has resulted many times from the failure to develop specifications...By requiring effective competition, Congress will serve notice on the agencies that they will need to do more than the minimum to comply with the statute.

S. Rep. No. 50, 98th Cong., 2d Sess. 19 (1984), reprinted in 1984 U.S.C.C.A.N. 2192. In interpreting the statutory requirements of CICA, GAO has consistently held that contracting officials have a duty to promote and provide for competition and to obtain the most advantageous contract for the government. *See HEROS, Inc.*, 2003 WL 21659392 (Comp. Gen.).

To this end, the Federal Acquisition Regulations ("FAR") require all federal agencies to engage in acquisition planning and conduct market research for all acquisitions in order to promote and provide for full and open competition. *See* FAR Part 7 and Part 10. Specifically, the FAR provides that as soon as an agency has identified a need, it should begin its acquisition planning well in advance of soliciting offers. More specifically, an agency's planning personnel should devise a written acquisition plan, which provides for, among other things, acquisition background and objectives, plan of action (to include competition), source selection procedures, and acquisition considerations. FAR 7.105. In contemplating the plan of action, an agency is to

describe how competition will be sought, and if other than full and open competition is contemplated, the agency must cite the authority, discuss the basis for the application of that authority, identify source(s), and discuss why full and open competition cannot be obtained. FAR 7.105(b)(2)(i).

Here, it is doubtful that DHHS engaged in any reasonable advance planning. It is telling that almost six months have passed since the initial solicitation for these services was issued, and DHHS has, not once, but twice, been forced to return to the drawing board. Moreover, each new issuance of a solicitation by DHHS has amounted to a further effort to circumvent the competition requirements of CICA. Specifically, DHHS first attempted to improperly procure the follow-on services through the SSI program. Immediately after the filing of a protest challenge with this Court, DHHS determined to take corrective action and terminated the illegal contract, thereby tacitly admitting that the relevant services were not properly procured through the SSI program. Clearly, this evidences a lack of reasonable advance planning, because had DHHS performed the required planning prior to issuing its initial solicitation for the follow-on work, it would not have proceeded pursuant to the SSI program.

Interestingly, it has been only 2 months since DHHS took remedial action in the prior case. After issuing and quickly withdrawing its second attempt at a solicitation for the relevant services, a procurement it planned to conduct pursuant to FAR Part 8 and apparently thought better of, DHHS is attempting yet again through the issuance of the Solicitation, now as a FAR Part 15 small business set-aside, to circumvent its statutory obligations inherent in any legitimate procurement effort. It is unlikely that DHHS, in less than 2 months, has performed the required advance planning for both subsequent new solicitations, each of which is premised on a completely different procurement methodology. This haphazard approach to the acquisition of

the Head Start follow-on technical assistance support services constitutes a clear sign that HRSA has failed to engage in the statutorily mandated advance planning in clear violation of both the language and spirit of CICA. As a result, DHHS can provide no reasonable analysis for limiting competition in the instant procurement.

**b. Acquisition Planning and Market Research Would Have Revealed that a Small Business Set-Aside Was Unreasonable**

In addition to performing acquisition planning, the FAR requires federal agencies to conduct market research. The purpose of conducting market research is to determine if there are sources capable of meeting the agency's requirements. This market research is particularly necessary when an agency is contemplating a small business set-aside. An agency may employ several methods to conduct its market research. However, this required market research requires the gaining and analysis of information specific to the item being acquired. *See* FAR 10.002(b)(1).

For acquisitions over $100,000, the contracting officer is required to use a small business set-aside if offers will be obtained from "at least two responsible small business concerns offering the products of different small business concerns" and if the "award will be made at fair market prices." FAR 19.502-2. Thus, prior to setting aside a procurement for small businesses, a contracting officer *must* conduct market research to determine whether bids can be obtained from *at least* two responsible small business concerns and whether competition will result in an award at fair market value. *Id.*

Here, the Contracting Officer failed to conduct the necessary market research to determine how best to acquire the Head Start Follow-on technical assistance support services under the Solicitation. If such market research had been conducted, the Contracting Officer would have discovered that a small business set-aside was inappropriate in this instance because

there are no responsible small business concerns able to perform the services required by the Solicitation. Indeed, as the incumbent and as a contractor in this industry, McKing is unaware of any other small businesses that would qualify to perform the specific services solicited by HRSA.[1] In fact, a search through the Central Contractor Registration System's, Dynamic Small Business Search using the NAICS code assigned to the Solicitation and the keywords "oral health" and "dentist", did not uncover any small business with the requisite backgrounds to perform the solicited services.[2]

In addition, if the Contracting Officer believed that these criteria could be met, DHHS' two prior aborted solicitation attempts would have also been conducted as small business set-asides, instead of pursuant to the SSI program and as a FAR Part 8 procurement, respectively. The fact that neither prior acquisition effort was structured as a small business set-aside and that HRSA failed to conduct the requisite advance planning and market research for those procurements suggests further that either no market research was conducted or that such research revealed that a small business set-aside was neither required nor appropriate.

It appears that HRSA is attempting simply to meet various DHHS policy goals under the SSI and socio-economic programs, without regard to the requirements for full and open competition or for the efficient and successful procurement of the Head Start follow-on technical assistance support services. However, HRSA is acting at the expense of McKing, a qualified minority, 8(a), women-owned business that has been successfully providing the required services for more than two years, that has been excluded improperly and unnecessarily from the

---

[1] Although the incumbent contract for these services was awarded to McKing as a small business set-aside, McKing no longer qualifies as a small business for the follow on procurement, a fact of which HRSA was well aware.

[2] A search under the keyword "dentist" did uncover one contractor, a temporary staffing agency that arguably would be unable to perform the required services.

competition. If HRSA's sincere intention was to procure the technical assistance support services in a manner consistent with the achievement of the Agency's socio-economic goals, it would not exclude deliberately and knowingly a qualified minority, 8(a), woman-owned business from the competition. This failure is further evidence that HRSA has failed to conduct the necessary market research prior to issuing this Solicitation and to otherwise comply with its statutorily mandated obligations under CICA. Because there are not at least two qualified small businesses (it remains questionable whether even one exists) able to perform the required Head Start technical assistance support services, a small business set-aside is inappropriate for this Solicitation and is inconsistent with the fundamental concept of full and open competition.

**c. DHHS Improperly Chose a Small Business Set-Aside to Retaliate Against McKing for Its Earlier Protest**

In light of the absence of the statutorily and regulatorily required market research and requisite acquisition planning, there can be only one explanation for DHHS' continued attempts to solicit the Head Start technical assistance support services in a manner that would exclude McKing, the incumbent. Specifically, DHHS' actions indicate a motivation to attempt to retaliate against McKing for the filings of its prior protests at the GAO and before this Court. Indeed, the haphazard nature of the three solicitations, and the fact that each employed diametrically opposed procurement methodologies, each improper and contrary to statute, indicates a rush to act in the absence of thoughtful and appropriate analysis. To the extent the Agency has painted itself into a corner and created exigent circumstances for the procurement of the follow-on services, it is DHHS' own doing. It is clearly more than a coincidence that each of three completely different, aborted procurement attempts has been designed deliberately to exclude McKing, the incumbent contractor. This exclusion of McKing is the one thing all of DHHS' efforts have in common. In light of the absence of the statutorily mandated acquisition

planning and market research and in the absence of any legitimate explanation by the Contracting Officer for excluding McKing from all three competitions, the conclusion is inescapable that the Agency's efforts were deliberately designed to achieve a pre-determined outcome – contract award to an offeror other than McKing, the most qualified vendor.

**2. DHHS' Conduct was Arbitrary and Capricious**

A reviewing court shall set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Administrative Procedure Act, 5 U.S.C. § 706(2)(a). An agency's actions are "arbitrary and capricious" if the award decision of the agency had no rational basis. *Info. Sciences Corp. v. United States*, 73 Fed. Cl. 70, 96 (2006); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001). If an agency's decision-making fails an APA review because it lacked a rational basis, the court must then determine whether the bidder was prejudiced by the Government's conduct. *See Info. Sciences*, 73 Fed. Cl. at 96. Here, DHHS' decision to limit competition to small businesses lacked a rational basis and McKing is prejudiced thereby.

Here, as outlined above, the Contracting Officer failed to conduct any acquisition planning and market research as mandated by statute and regulation. *See e.g.*, FAR Parts 7 and 10. Moreover, the use of a small business set-aside was accomplished without explanation and, importantly, fails to comply with the requirements of CICA. This Solicitation is the third in a series designed deliberately and knowingly to exclude McKing, the incumbent contractor, from bidding. As this Solicitation appears to have been structured in a manner designed to retaliate against McKing for its prior protest, there is no rational basis for the manner in which this Solicitation was issued. As such, DHHS' conduct was arbitrary and capricious.

**B. McKing Will Suffer Irreparable Harm Absent a Preliminary Injunction**

In this case, there is a distinct likelihood that, if a preliminary injunction is not granted, HRSA will transition a new contractor into the MCH/Head Start Regional Oral Health Expert Logistics Management Program to the point that McKing will be unable to retain sufficient staff to immediately resume administration of the contract with the same level of quality performance should McKing prevail in its protest. *See* Ex. 1 at ¶ 15. McKing utilizes fourteen highly specialized expert consultants under the current contract to provide oral health assistance to the twelve Head Start regional offices. If the work of the contract is transferred to another contractor, these consultants may be expected to quickly terminate their contracts with McKing and seek work with the new contractor. *Id.* at ¶ 16. If McKing is not in a position to immediately resume high quality performance of the MCH/Head Start Regional Oral Health Expert Logistics Management Program contract, McKing will lose both credibility within MCHB and HRSA and profits. *Id.* at ¶ 17.

It is axiomatic that, under these circumstances, McKing will suffer an irreparable injury unless this Court grants McKing's motion for a preliminary injunction. "A loss of potential profits 'stemming from a lost opportunity to compete'" is "sufficient to constitute irreparable harm." *OTI America, Inc. v. United States*, 68 Fed. Cl. 646, 659 (2005) (quoting *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 654 (2003)); *see also United Payors & United Providers Health Srvs., Inc. v. United States*, 55 Fed. Cl. 323, 333 (2003) (finding irreparable injury where plaintiff "would not be able to recover lost profits associated with its loss of business"). In short, "[a]n award of bid preparation costs would not, by itself, be sufficient to redress the injury to" McKing, should the current Solicitation be permitted to stand. *OTI America, Inc.*, 68 Fed. Cl. at 659.

### C. The Balance of Harms and the Public Interest Decidedly Favors McKing

DHHS would suffer no harm if it were enjoined from proceeding with the present solicitation. McKing successfully has been managing the MCH/Head Start Regional Oral Health Expert Logistics Management Program for two years and is ready and willing to continue performance of the Program. *See* Ex. 1 at ¶ 14. Moreover, McKing's current contract for those services was extended beyond its expiration date and McKing will continue performance until a successful re-procurement for the services is conducted. *Id.* at ¶ 4.

In this case, the public has "a long-term interest in ensuring that the new contract represents the best overall value to the government." *PGBA*, 57 Fed. Cl. at 663. As in *PGBA*, "[g]iven the fact that there is no real indication that…[a] stay will impair services…[,] these long-term interests are paramount here and are best served by issuing the proposed injunction." *Id.*; *see also Univ. Research Co., LLC v. United States*, 65 Fed. Cl. 500, 514 (2005) ("[t]he costs and inconvenience associated with the delay in transition caused by the issuance of a preliminary injunction in this case are typical of the costs and inconveniences that face almost every new contractor seeking to unseat an incumbent contractor, and do not outweigh the imminent harm to plaintiff").

## III. CONCLUSION

As evidenced by the foregoing, McKing meets all the requisites for a preliminary injunction. Indeed, not granting McKing's motion would cause far more harm to the integrity of the procurement process, to the taxpayer, and to McKing.

Dated: January 12, 2007

Respectfully submitted,

Jessica C. Abrahams
McKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

Counsel of Record for Plaintiff McKing Consulting Corporation

Of Counsel:

Shari L. Klevens
Jennifer M. Morrison
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MCKING CONSULTING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. ________________<br><br>Judge: ________________ |

## DECLARATION OF JEFFREY HUMAN

I, Jeffrey Human, under penalty of perjury, hereby depose and state as follows:

1. I am a Vice President of McKing Consulting Corporation ("McKing"). My business address is 11821 Parklawn Drive, Suite 260, Rockville, Maryland, 20852. I have personal knowledge of all of the facts stated herein.

2. Formerly, I spent approximately 31 years in federal service, mostly in the Health Resources and Services Administration ("HRSA") and its predecessor organizations. I ran many health programs and for the last ten years of my civil service career, ending in 1997, served in the Senior Executive Service.

3. McKing is a minority- and woman-owned professional services corporation certified to participate in the U.S. Small Business Administration's 8(a) program until May 18, 2010. McKing provides a variety of information technology and general and specialized management and technical assistance consulting services to numerous Federal Government clients, a number of States under its Federal contracts, and private sector clients, both for profit and nonprofit.

4. Currently, I supervise a staff of eight full time employees who all provide assistance to HRSA clients. One of my responsibilities in my current McKing position is serving as Project Director for a Task order with the Maternal and Child Health Bureau ("MCHB") of HRSA, which in turn is a principal operating component of the U.S. Department of Health and Human Services. The purpose of the Task order is to provide technical assistance support services for the Maternal and Child Health Bureau's Head Start Regional Oral Health Experts. The Task order is No. HHSH24055006, which was awarded pursuant to contract No. HHSH250200446006I. This is an Indefinite Delivery-Indefinite Quantity ("IDIQ") contract. McKing won both the contract and relevant task order through a competitive bidding process.

5. McKing began providing the technical assistance support services for the MCH/Head Start Regional Oral Health Expert Logistics Management Program under contract, No. HHSH24055006 on September 29, 2004. McKing currently performs work under that contract, and has performed services under that contract for more than two years. McKing's incumbent contract, which expired in September 2007, has been extended by the Agency, and McKing continues to perform the relevant services pending their reprocurement.

6. McKing successfully has been managing the MCH/Head Start Regional Oral Health Expert Logistics Management Program for two years and is ready and willing to continue performance of the Program. As the new solicitation includes the same performance requirements as the incumbent contract, McKing is currently fully capable as the incumbent contractor to continue performing its tasks under the new contract.

7. On September 28, 2006, DHHS awarded Contract No. HHSH240F5806 for technical assistance support services for the Maternal and Child Health Bureau's Head Start Regional Oral Health Experts to Professional and Scientific Associates, Inc. ("PSA"), pursuant

to its events management BPA in order to assist DHHS in meeting its goals under the SSI. The procurement was restricted to four events management BPA holders, including PSA, and was not conducted pursuant to full and open competition, as required by CICA.

8. The terms of the underlying Solicitation No. 06-S240-0517-SS rendered McKing ineligible to bid on the contract, as the bidding was open only to BPA holders. The solicitation was comprised of the same work currently being performed by McKing pursuant to Contract No. HHSH24055006.

9. McKing's contract states that "[t]he scope of work of this Task Order includes the (sic) coordinating the travel and/or honoraria for Regional Oral Health consultants and other oral health experts to attend meetings, workshops and training at the twelve Head Start Regional Offices as determined by the Project Officer. The scope of work does not include the requirement for the Contractor to provide logistics management service to support the meetings, conferences, training events, etc. in which the Regional Oral Health consultants and other oral health experts will participate."

10. On October 6, 2006, McKing protested the award to PSA at the U.S. Government Accountability Office ("GAO"). After filing a motion with this Court to enjoin DHHS' override of the automatic CICA stay of performance, on November 22, 2006, McKing re-filed its protest against the award to PSA at the COFC. On November 27, 2006, the Government took what appeared to be corrective action, abandoning its defense and terminating the improper award to PSA.

11. On December 12, 2006, DHHS published a pre-solicitation notice in FedBizOpps describing its acquisition of the follow-on technical assistance support services for the Maternal

and Child Health Bureau's Head Start Regional Oral Health Experts as a 100% small business set-aside restricted to GSA MOBIS Schedule contract holders.

12. On December 13, 2006, McKing sent a letter to the HRSA Contracting Officer stating, among other things, that it was inappropriate to restrict the noticed procurement to small businesses, as doing so would prohibit McKing's participation. McKing asserted that restricting competition in this way served neither the beneficiaries of the Head Start program, as McKing is unequivocally the contractor most qualified to perform the work, nor DHHS' socio-economic programmatic goals because it is not in DHHS' interest to restrict artificially the participation of minority-owned, 8(a), and woman-owned businesses in the procurement process. McKing requested that HRSA reconsider its decision to set aside the above-referenced procurement for small business. Subsequently, HRSA withdrew the pre-solicitation notice.

13. On December 22, 2006, HRSA published Request for Proposals No. TA SERVICES MCHB-DLC on FedBizOpps. Unlike the previously withdrawn December 12, 2006 pre-solicitation notice, the Solicitation is not a FAR Part 8 procurement, but is instead a small business set-aside under NAICS Code 541611 being conducted pursuant to FAR Part 15.

14. DHHS was aware prior to the issuance of the Solicitation that McKing would be ineligible to compete for work that was set aside for small business. The effect of this DHHS action, with respect to McKing, was the same as the effect of the original DHHS in awarding the contract to PSA. In each of these actions, McKing was ineligible to compete for the follow-on contract.

15. There is a distinct likelihood that, if a preliminary injunction is not granted, any new contractor will transition into the MCH/Head Start Regional Oral Health Expert Logistics Management Program to the point that McKing will be unable to retain sufficient staff to

immediately resume administration of the contract, with the same level of quality performance, should McKing have the opportunity to do so.

16. McKing utilizes fourteen highly specialized expert consultants under the current contract to provide oral health assistance to the twelve Head Start regional offices. If the work of the contract is transferred to another contractor, these consultants may be expected to quickly terminate their contracts with McKing and seek work with the new contractor.

17. If McKing is not in a position to immediately resume high quality performance of the MCH/Head Start Regional Oral Health Expert Logistics Management Program contract, McKing will lose both credibility within MCHB and HRSA and profits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of January, 2007.

Jeffrey Human

DC:50455344.1

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of McKing Consulting Corporation's Complaint, Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction, and Motion for Preliminary Injunction, and Application for Temporary Restraining Order to be served this 12th day of January, 2007, by facsimile on the following:

Mark Melnick
Department of Justice
Commercial Litigation Branch, 7th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Bryant Snee
Department of Justice
Commercial Litigation Branch, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Michael L. Goulding
HHS – Office of the General Counsel
General Law Division
Room C2-05-23 Central Building
7500 Security Boulevard
Baltimore, MD 21244

Counsel for Defendant United States

Jessica C. Abrahams