**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| MCKING CONSULTING CORPORATION,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | No. 1:07-CV-017<br><br>Judge: Lawrence J. Block |

**MCKING CONSULTING CORPORATION'S**
**BRIEF ON SECTION 423(G) OF THE PROCUREMENT INTEGRITY ACT**

During the oral argument on March 29, 2007, the Court requested that the parties submit briefs regarding Section 423(g) of the Procurement Integrity Act, 41 U.S.C. §423(g) ("the Act"). Specifically, the Court asked the parties to address whether Section 423(g) of the Act requires exhaustion of administrative remedies before a bid protest may be filed in this Court, *i.e.* whether the Court can consider a claim under Section 423 even if the protester has not sought resolution of the issues at the agency level and has not filed a prior protest before Government Accountability Office ("GAO"). For the reasons cited below, McKing respectfully asserts that the Court has jurisdiction over allegations of violations of the Act made in the context of a bid protest and that a protester must not exhaust administrative remedies prior to raising relevant issues with the Court.

## I. ARGUMENT

### A. The Plain Language of Section 423(g) Does Not Require Exhaustion of Administrative Remedies

A review of the explicit language of Section 423(g) of the Act in conjunction with the Tucker Act, which grants jurisdiction to this Court to hear bid protests, makes clear that Section 423(g) imposes neither an exhaustion requirement nor a bar to the Court's authority to review alleged violations of the Act in a bid protest context. As described below, a reading of the three clauses of Section 423(g) renders obvious that the Act does not impact the Court's jurisdiction to review the allegations raised by McKing in Count III of its Amended Complaint.

Section 423(g) of the Act, entitled "Limitations on protests," provides as follows:

> No person may file a protest against the award or proposed award of a Federal agency procurement contract alleging a violation of subsection (a), (b), (c), or (d) of this section, nor may the Comptroller General of the United States consider such an allegation in deciding a protest, unless that person reported to Federal agency responsible for the procurement, no later than days after the person first discovered the possible violation, the information that the person believed constitutes evidence of the offense.

Section 423(g) consists of three clauses --

> Clause 1: "No person may file a protest against the award or proposed award of a Federal agency procurement contract alleging a violation of subsection (a), (b), (c), or (d) of this section"
> Clause 2: "nor may the Comptroller General of the United States consider such an allegation in deciding a protest"
> Clause 3: "unless that person reported to Federal agency responsible for the procurement, no later than days after the person first discovered the possible violation, the information that the person believed constitutes evidence of the offense"

In analyzing the relevant language, the first and second clauses of Section 423(g) can and should be read together, because they are separated by the word "nor." In other words, either the first or second clause can be read with the third clause, and Section 423(g) can be read logically. For example: "No person may file a protest against the award or proposed award of a Federal agency procurement contract alleging a violation of subsection (a), (b), (c), or (d) of this section .

. . unless that person reported to Federal agency responsible for the procurement, no later than days after the person first discovered the possible violation, the information that the person believed constitutes evidence of the offense." As another example: "[T]he Comptroller General of the United States [may not] consider such an allegation in deciding a protest . . . unless that person reported to Federal agency responsible for the procurement, no later than days after the person first discovered the possible violation, the information that the person believed constitutes evidence of the offense." The impact of both readings is clear.

The question raised by the Court with respect to this interpretation raises the issue as to whether the meaning of the first and second clauses of Section 423(g) are the same so as to impose an administrative exhaustion requirement on a protester prior to bringing alleged violations of the Act to this Court. The first clause, simply stated, does not allow any person to bring a protest alleging a violation of the Act unless the requirement of the third clause is met. The second clause, simply stated, does not allow the GAO to consider a violation of the Act in deciding a protest unless the terms of the third clause are satisfied. Read plainly, the first and second clauses can clearly be distinguished and, thus, are not redundant.

Further, while the Tucker Act confers jurisdiction on this Court over a protest filed by an interested party "of a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement," 28 U.S.C. §1491(b)(1), a protester is not precluded by the Tucker Act from instead filing a protest in the GAO premised on the same grounds. As such, the first clause of Section 423(g) would apply to protests filed in this Court and the second clause would alternatively apply to protests filed at GAO. Under that interpretation, Section 423(g) essentially states that a protestor may not file a protest in this Court or in the GAO unless notice is provided to the relevant Agency at least 14 days before the filing.

An alternative reading of the two clauses is that the first clause disallows the filing of a protest in this Court or GAO, and that the second clause requires GAO to dismiss such claim if notice has not been made consistent with the third clause of Section 423(g). Under this interpretation, the statute would require dismissal by GAO of a claim that an agency violated the Act, even if such dismissal was not raised by the defendant in its answer. Consistent with that approach, this Court would have no such similar requirement and, as such, the Government would need to raise any jurisdictional objection before the Court could dismiss an action on that ground. The Court need not decide between the two interpretations advanced by McKing, however, as either one would result in the proper exercise of jurisdiction by this Court under the facts presented here.

**B. Section 423(g) Merely Requires Timely Notice To The Relevant Agency, Which McKing Provided**

Reading the Act as advocated by McKing above highlights the fact that Section 423(g) imposes nothing more than a notice requirement. In other words, the reason for Section 423(g) is to ensure that the relevant Federal agency has the opportunity to cure any violation of the Act before a protest is filed and that such notice is made in timely manner. Consequently, a logical interpretation of Section 423(g) is that a potential protester cannot file a protest alleging a violation of the Act unless it has first notified the relevant agency within 14 days after the discovery of an alleged violation. As addressed by McKing in the reply brief in support of McKing's motion for judgment on the administrative record, McKing notified the agency of the alleged violation of the Act within 14 days after McKing's receipt of the Administrative Record, wherein McKing first learned that a potential violation had occurred. For example, in a letter dated February 9, 2007, sent to Ms. Alexandra Garcia of the Department of Health and Human

Services, HRSA, Division of Procurement Management, Ms. Abrahams described the alleged offense in detail and cited to the Act. AR 2593-96. That letter was sent exactly 14 days after McKing's counsel received the Administrative Record, and therefore, is timely under the Act. In response, the agency declined to take action to cure the alleged violation. As such, McKing has met the pre-filing requirements set forth in Section 423(g).

Interpreting the Act in the manner advocated by McKing is consistent with this Court's decision in *Avtel Services, Inc. v. U.S.*, 70 Fed. Cl. 173 (2005). In that case, while the defendant did not contest this Court's jurisdiction under Section 423(g), the intervenor argued that the Act "requires the plaintiff to bring its bid protest before the Government Accountability Office (GAO) within 14 days of first discovering the possible violation," which plaintiff had not done. *Id.* at 182. The Court concluded, however, that the plaintiff had provided notice to the agency and that the Contracting Officer declined to take action to correct the alleged violation, similar to the agency's action in this protest. Consequently, the *Avtel* court concluded that it had jurisdiction to review the relevant bid protest allegations.[1] *Id.* at 183. The Court should reach a similar conclusion here. In addition, because the facts of the *Avtel* case that are relevant to the Section 423(g) analysis are almost identical to the facts here, McKing respectfully asserts that this Court can exercise jurisdiction over McKing's assertions that the Agency violated the Act, even if the Court is not persuaded by McKing's interpretation of Section 423(g) by merely following the result in the *Avtel* decision.

[1] In several other cases, this Court has not only found jurisdiction to resolve allegations of violations of the Procurement Integrity Act seemingly without raising or considering whether a GAO protest was previously filed or even required, *see, e.g., DGS Contract Service, Inc. v. U.S.*, 43 Fed. Cl. 227 (1999), but the Court has also granted requests for discovery sought by the protestors in those actions. *See, e.g., Pikes Peak Family Housing, LLC v. U.S.*, 40 Fed. Cl. 673 (1998).

### C. Cases Arising Under the Randolph Sheppard Act are Not Relevant Because that Act is Not Analogous to the Procurement Integrity Act

During the oral argument on March 29, the Court considered the issue regarding the potential requirement to exhaust administrative remedies at the agency and at GAO as a potential analogy to cases arising under the Randolph Sheppard Act. In particular, the Court cited to *Kentucky v. U.S.*, 62 Fed. Cl. 445 (2004), for the proposition that exhaustion of administrative remedies may be required before a bid protest may be filed in the Court of Federal Claims. In *Kentucky*, this Court concluded that it lacked jurisdiction because the administrative arbitration remedy in the Randolph Sheppard Act required arbitration before the filing of a bid protest in this Court. In contrast to the Procurement Integrity Act, which is one of many pieces of the statutory framework imposed on all FAR-covered Government contracts as a basis to maintain transparency and integrity in the procurement process, the Randolph Sheppard Act outlines a complicated and comprehensive program to set aside the operation of food kiosks in Government facilities to blind-owned businesses. As such, the Randolph Sheppard Act includes provisions that address administration of the program, the identification of relevant contracts, the terms and conditions of those contracts, and provisions of dispute resolution, including arbitration requirements.[2]

Accordingly, the exhaustion requirement for dispute resolution set forth in the Randolph Sheppard Act is clearly distinguishable from the "Limitation on Protest" provision contained in the Procurement Integrity Act. First, the context of the Randolph Sheppard Act, other relevant sections of the Randolph Sheppard Act, and cases arising under the Randolph Sheppard Act, all

[2] The Randolph Sheppard Act's dispute resolution process is analogous to that set forth in the Contracts Disputes Act and the FAR disputes clause in that both impose explicitly certain administrative processes prior to the filing of a claim in a judicial proceeding over an issue arising out of contract performance.

suggest an intent by Congress "to construct a mandatory arbitration process." *See id.* at 456-57. No such context or facts exist here in either Section 423(g) or in any other sections of the Procurement Integrity Act, the cases arising under the Act, or the legislative history, which is silent on this issue.[3] In addition, the administrative remedy at issue in relation to the Randolph Sheppard Act is an arbitration scheme, and "where Congress has created an arbitration scheme as the administrative method for enforcing a statutory right, there is a strong presumption that it is exclusive." *Id.* at 457. On the other hand, the administrative remedy at issue in the present case is a protest brought at GAO, which is clearly not exclusive under the Tucker Act. Finally, the Randolph Sheppard Act relates to a very particular and narrow government program. The Procurement Integrity Act, however, is a statute that applies to all potential contracts and procurements. In light of these differences between the Randolph Sheppard Act and the Procurement Integrity Act, which are clearly not analogous, the Court need not follow the logic or conclusions found in cases arising under the Randolph Sheppard Act. Consequently, while the failure by a protester to exhaust its administrative remedy in disputes resulting from contracts awarded under the Randolph Sheppard Act deprives this Court of jurisdiction to decide the matter, the same is not true of protests arising under the Procurement Integrity Act where a protest is not previously filed at GAO.

## II. CONCLUSION

For the reasons cited above, this Court has jurisdiction to resolve Plaintiff's claims that

---

[3] In *Kentucky*, the Court had a reasonable basis for considering those other sources because a plain reading of the statute would lead to an unsound result. Indeed, literal interpretation of a statute must be ignored if doing so would "lead to an absurd result, or thwart the purpose of the statute." *Kentucky v. U.S.*, 62 Fed. Cl. 445, 454 (2004). However, if there is a plain and unambiguous meaning of the statute, the Court should "effect the intention of the legislature." *Id.* at 453. Because there is a plain reading of the Act here that would lead to a logical result, as described above, a plain reading of the Act is mandated.

HRSA violated the Procurement Integrity Act.

Dated: April 6, 2007

Respectfully submitted,

JESSICA C. ABRAHAMS

s/Jessica C. Abrahams
McKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

Counsel of Record for Plaintiff McKing Consulting Corporation

Of Counsel:
Daniel E. Johnson
Shari L. Klevens
Jennifer Morrison
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500