**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Bid Protest)

| | | |
|---|---|---|
| MCKING CONSULTING CORPORATION, Plaintiff, | ) | No. 07-017C |
| v. | ) | (Judge Block) |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL BRIEF**

Pursuant to this Court's order, dated March 29, 2007, the United States, respectfully submits this supplemental brief regarding the doctrine of exhaustion. In light of this Court's queries, as we demonstrate below, McKing Consulting Corporation's ("McKing") allegations concerning the Procurement Integrity Act, 41 U.S.C. § 423, should be dismissed for failure to exhaust its administrative remedies, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").[1]

The doctrine of exhaustion provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938). Federal courts apply two types of exhaustion — statutory and prudential. If an exhaustion requirement is statutory, the Court lacks discretion and must require exhaustion. See, e.g., Kentucky v. United States, 62 Fed. Cl. 445 (2004), aff'd, 424 F.3d 1222 (Fed. Cir. 2005) (Randolph-Sheppard Act). If,

[1] While we have sought to fully analyze the exhaustion issue herein in accordance with the Court's order, we believe that the law and facts of this case best place this matter within the rubric of ripeness/standing or prudential exhaustion, or may be decided on the merits. Accordingly, we respectfully incorporate the arguments in our motion for judgment upon the administrative record and reply.

however, Congress has not required exhaustion, the Court still may exercise its prudential discretion to require exhaustion. See McCarthy v. Madigan, 503 U.S. 140, 144 (1992).

Because the Procurement Integrity Act places an express limitation upon protests that requires that a claim first be made with the agency, we respectfully request that this Court hold that the doctrine of statutory exhaustion applies, and dismiss McKing's Procurement Integrity Act allegations for lack of subject matter jurisdiction. In the alternative, because the statute clearly contemplates the application of administrative discretion, and the regulations set up a comprehensive scheme for administrative review, we respectfully request that the Court apply the doctrine of prudential exhaustion, and dismiss such allegations for failure to state a claim.[2]

## I. The Court Should Apply The Doctrine Of Statutory Exhaustion

The Procurement Integrity Act expressly limits the ability of a party to file a protest for alleged violations of the provisions of the Act. Specifically, this Act provides that:

> (g) Limitations on protests:
> No person may file a protest against the award or proposed award of a Federal agency procurement contract alleging a violation of subsection (a), (b), (c), or (d) of this section, nor may the Comptroller General of the United States consider such an allegation in deciding a protest, unless that person reported to the Federal agency responsible for the procurement, no later than 14 days after the person first discovered the possible violation, the information that the person believed constitutes evidence of the offense.

41 U.S.C. § 423(g). McKing, however, never presented information that it believes "constitutes evidence of the offense" to the agency prior to seeking to amend its complaint.

[2] Prudential exhaustion, unlike statutory exhaustion, is not jurisdictional. See White & Case v. United States, 67 Fed. Cl. 164, 169 n. 6 (2005).

Indeed, the Procurement Integrity Act does not mandate that the agency take a specific action as a result of a violation, but merely provides that the agency "shall consider taking one or more of the following actions, as appropriate," including cancellation of a procurement, recission of a contract, suspension and debarment proceedings, and adverse personnel action. 41 U.S.C. § 423(e)(3)(A). Because McKing never presented its claims to the agency, the agency never had the opportunity to consider whether any such action was appropriate.

While this Court has entertained bid protests involving the Procurement Integrity Act, we are not aware of any instance in which this Court has reviewed a Procurement Integrity Act claim without prior review by the contracting officer. For example, in Avtel Services v. United States, 70 Fed. Cl. 173, 182-83 (2005), an incumbent contractor asserted a violation of the Procurement Integrity Act with the contracting officer, and filed in this Court after the contracting officer decided to take no action upon the allegation. See also Synetics, Inc. v. United States, 45 Fed. Cl. 1 (1999).

However, as noted in oral argument and our previous filings, the "definitions" section of the Procurement Integrity Act defines the term "protest" with reference to the statutory provisions that relate to protests filed before the Comptroller General, rather than the Tucker Act. Specifically, the statute provides

> The term "protest" means a written objection by an interested party to the award or proposed award of a Federal agency procurement contract, pursuant to subchapter V of chapter 35 of title 31.

41 U.S.C. § 423(f)(6). If the phrase "pursuant to subchapter V of chapter 35 of title 31" is read to modify "a written objection," the subsequent "limitations on protests" provisions would apply only to protests filed with the Comptroller General. However, the phrase "pursuant to subchapter V of chapter 35 of title 31" also could be read as modifying the initial phrase "[t]he

term 'protest' means." Pursuant to this interpretation, the reference to Title 31 of the United States Code would merely import the definition of "protest" from Title 31. See 31 U.S.C. § 3551(1) (defining the term "protest"). This interpretation is consistent with the other provisions of the definitions sections, which also import definitions from other sections of the United States Code. See, e.g., 41 U.S.C. § 423(f)(1)(A) (importing the term "cost or pricing data"), (3) (importing the term "Federal agency") (7) (importing the term "official").

This latter interpretation also is consistent with the express language of the "limitation of protests" provision, which treats "fil[ing] a protest against the award or proposed award of a Federal agency procurement contract" as distinct from having the "Comptroller General of the United States consider such an allegation in deciding a protest." 41 U.S.C. § 423(g). Such language implies that there are two different types of limitations within the statute, one of which relates to "protests" more broadly, and the other which relates to the "Comptroller General." Further, this reading is consistent with the statute's broad grant of discretion to the agency in determining what administrative action, if any, the agency should take in response to a violation. 41 U.S.C. § 423(e)(3)(A). If the agency has no chance to review an alleged violation prior to the protest, there is no decision related to the Procurement Integrity Act to review in a protest.

Accordingly, because McKing failed to first submit it claims to the contracting officer, we respectfully request that this Court apply the doctrine of statutory exhaustion, and hold that the Court does not possess jurisdiction over McKing's Procurement Integrity Act claims.

## II. In The Alterative, The Court Should Apply The Doctrine of Prudential Exhaustion

The Court, however, need not analyze any ambiguity in the statute to apply the doctrine of exhaustion. Where regulations impose an inclusive administrative scheme, and where no other statute limits the Court's authority to apply the prudential exhaustion doctrine to require

compliance with those regulations, this Court may apply the prudential doctrine of judicial administration to require exhaustion. See Portela-Gonzalez v. Sec. of the Navy, 109 F.3d 74, 77 (1st Cir. 1997) (applying prudential exhaustion doctrine in a case in which Congress did not otherwise "mandate[] that such employees always must exhaust administrative remedies as a condition precedent to suit"); see also Martinez v. United States, 325 F.3d 1295, 1309 (Fed. Cir. 2003) (en banc) (considering application of the doctrine of prudential exhaustion but stating that the statute governing military correction boards provided only permissive and not mandatory remedies and noting that no mandatory regulations existed).

In this case, the Federal Acquisition Regulation ("FAR") set up a complete administrative scheme for the agency review of allegations of improper business practices and, in particular, violations of the Procurement Integrity Act.[3] 48 C.F.R. § 3.104; id. § 303.104-7; see generally id. §§ 3.000-3.906. Specifically, the regulation provides that a contracting officer who receives information regarding an alleged violation of the Act must first determine if the alleged violation has any impact upon a pending award or selection. Id. § 3.104-7(a). If the contracting officer concludes that there is no impact, this determination is reviewed and approved by the Head of the Contracting Activity ("HCA"). Id. § 303.104-7(a)(1). If the contracting officer concludes that there is an impact, then the information and documentation regarding the alleged violation is forwarded to an agency official with the Senior Executive Service ("SES"), either the HCA or another SES official designated by the Operations Division. Id. § 303.104-7(a)(2). Further, the SES official will refer the matter immediately to the Deputy

[3] While the FAR's general provisions provide a detailed scheme for review of a Procurement Integrity Act claim, the Department of Health and Human Services has further supplemented these provisions to provide for greater review of such a claim. 48 C.F.R. § 303.104-7.

Assistant Secretary for Acquisition Management and Policy, Assistant Secretary for Administration and Management, Office of the Secretary, for review, which may consult with the Office of the General Counsel and the Office of the Inspector General, as appropriate. Id. § 303.104-7(a)(2)(i). Finally, this SES official will determine the action to be taken on the procurement, with the consent or approval of the Office of Acquisition Management and Policy. Id. § 303.104-7(a)(2)(ii). As with all agency level protests, the FAR contemplates that the agency will make its best efforts to resolve such protests within 35 days of filing. Id. § 33.103.

The exhaustion doctrine "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency," and, as such, should be enforced. Portela-Gonzales, 109 F.3d at 77 (citing McCarthy, 503 U.S. at 145-46). Indeed, courts possess only a "modicum of discretion" in relaxing an exhaustion requirement when an agency regulation requires it. Id. at 77. As the Supreme Court explained in McCarthy, requiring exhaustion serves the first of these twin purposes by "acknowledg[ing] the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," especially when "'frequent and deliberate flouting of administrative processes' could weaken an agency's effectiveness by encouraging disregard of its procedures." McCarthy, 503 U.S. at 145 (citing McKart v. United States, 395 U.S. 185, 195 (1969)). Second, exhaustion promotes judicial efficiency, because the administrative process "may prevent the courts from ever having to intervene, as the plaintiff may be able to gain the relief he seeks through the administrative process" and may "produce an agency record that is useful for subsequent court review," if review is necessary. See White & Case, 67 Fed. Cl. at 170(citing McCarthy, 503 U.S. at 145; McKart, 395 U.S. at 195; Weinberger v. Salfi, 422 U.S. 749, 765 (1975)). Requiring exhaustion here serves these twin purposes.

First, as demonstrated above, it is clear from the Procurement Integrity Act that Congress specifically intended that agencies should have the ability to make an initial review of an alleged violation, and determine the appropriate administrative action, if any, to take. 41 U.S.C. § 423(e), (g). To permit McKing to evade such review would eviscerate completely Congress's explicit grant of discretion to the agency in determining the appropriate penalty for an alleged violation. As the Supreme Court has stated, "[e]xhaustion concerns apply with particular force when the agency action under review involves exercise of the agency's discretionary powers. . . ." McCarthy, 503 U.S. at 145. Further, the agency has set up a careful and detailed scheme to review a claim that there was a violation of the Procurement Integrity Act, a serious charge which may involve civil or criminal penalties. See 48 C.F.R. §§ 3.104-7; 303.104-7.

Second, the review provided in 48 C.F.R. § 303.104-7 may well resolve the dispute altogether, eliminating any need for this Court's intervention. And, even where a dispute still remains, the record ultimately submitted to this Court would be more extensive, providing this Court with a more thorough basis upon which to decide the protest.

The Court may, of course, decline to enforce the prudential exhaustion doctrine when "the litigants' interests in immediate judicial review outweighs the government's interest in [] efficiency or administrative autonomy. . . ." White & Case, 67 Fed. Cl. at 170. Specifically, the Court may relax an exhaustion requirement when exhaustion may prejudice the plaintiff, when the agency may not be able to grant effective relief through the administrative process, or when the administrative body is prejudiced. See McCarthy, 503 U.S. at 146-148; White & Case, 67 Fed. Cl. at 170-171. However, none of these three exceptions applies here.

### A. Requiring Exhaustion Would Not Have Prejudiced McKing

Prejudice can occur when administrative action has taken an "unreasonable or indefinite" amount of time or has been otherwise delayed. See McCarthy, 503 U.S. at 147, 152 ("short, successive filing deadlines" imposed on plaintiffs "create a high risk of forfeiture of a claim for failure to comply"); White & Case, 67 Fed. Cl. at 171 (finding unreasonable delay when an informant waited five years for a decision from United States Customs and Border Protection).

Here, McKing cannot demonstrate that exhaustion would have prejudiced it in any way. McKing waited 19 days after receiving the administrative record on January 26, 2007 before filing its amended complaint in this Court on February 14, 2007. Because the agency had agreed to stay performance during the pendency of this protest (through March 23, 2007), if McKing filed with the agency when it received the record, the agency could have easily completed the mandatory review process prior to any award decision. Even if the agency had taken the full 35 days to review McKing's claim, McKing still would have received a decision on the Procurement Integrity Act claim prior to the initial scheduled date of oral argument. Further, such review would not have prejudiced McKing, because McKing currently does not have the ability to be awarded any contract pursuant to the present procurement unless this Court overturns the agency's small business set aside determination. Any hypothetical alleged harm that McKing suffers now resulted only from its own decision to leave "an available administrative remedy untapped," and not because of anything inherent in the administrative process itself. See Portela-Gonzalez, 109 F.3d at 80 ("Where, as here, a party decides unilaterally to forsake those [administrative ]rules, [it] does so at [its] own peril").

### B. The Department of Health and Human Services Could Have Granted Effective Relief

The Court may excuse prudential exhaustion when the agency lacks authority to grant the relief sought. In other words, when the agency lacks institutional competence to resolve the particular type of issue presented, such as the "constitutionality of a statute" or "lack[s] authority to grant the type of relief requested," or the challenge is to "the adequacy of the agency procedure itself," exhaustion need not be required. See McCarthy, 503 U.S. at 148, 152 (prison's administrative procedure could not grant monetary damages, the relief plaintiff inmate sought); Barry v. Barchi, 443 U.S. 55, 63 n.10 (1979) (plaintiff was not required to exhaust administrative remedies where the administrative remedy was itself the issue of the lawsuit).

Here, had McKing presented its claim to the agency, the agency could have provided any of the relief sought by McKing, including, but not limited to, the cancellation of the procurement and/or the disqualification of the contractor that McKing alleges improperly received contractor bid or proposal information. 41 U.S.C. § 423(e); 48 C.F.R. § 3.104-7(d)(1) (where a contract has not been awarded, the agency may "[c]ancel the procurement," "[d]isqualify an offeror," or "[t]ake any other appropriate actions in the interests of the Government" in response to a violation of the Act). Cf. Portela-Gonzalez, 109 F.3d at 80 (requiring exhaustion where the Navy was capable of granting the "reinstatement, reassignment, and quashing the charges" that the plaintiff sought). Accordingly, the agency could have provided effective relief.

### C. The Agency Does Not Predetermine The Issues

Finally, this Court may relax exhaustion requirements where the administrative body is proved to be biased or has otherwise predetermined the issue. McCarthy, 503 U.S. at 148. See also Portela-Gonzalez, 109 F.3d at 77 ("the exhaustion rule may be relaxed where there are clear,

objectively verifiable indicia of administrative taint"). There are no indicia, however, that the agency was in any way biased. Indeed, the agency's review of McKing's separate Trade Secrets Act claim, and its actions in taking steps to remove any questionable information from the internet upon McKing's filing of that claim, demonstrate the agency's good faith effort to carefully review any allegations made by McKing. AR 2112-2599. Further, the administrative process requires review by several designated individuals and offices. 48 C.F.R. § 3.104-7(a). There is no evidence that the contracting officer would have been unwilling to review McKing's dispute. See, e.g., Portela-Gonzalez, 109 F.3d at 80 (exhaustion required for a plaintiff who only partially exhausted his remedies because there was "no meaningful indication of any institutional bias" in the Navy, even though the plaintiff lost every step of the administrative process that she actually completed). And there certainly is no evidence that the other designated offices and officials – HCA; the Deputy Assistant Secretary for Acquisition Management and Policy, Assistant Secretary for Administration and Management, Office of the Secretary; the Office of General Counsel; and the Office of the Inspector General – which were not directly involved with the procurement, have predetermined a result or are in any way biased. Accordingly, "predetermination of the issues" does not provide a basis upon which to relax the exhaustion requirement.

Accordingly, we respectfully request that this Court apply the prudential exhaustion doctrine, and hold that the Court does not possess jurisdiction over McKing's Procurement Integrity Act claims.

## **CONCLUSION**

For the reasons stated above, and as set forth in our briefs, we respectfully request that the Court dismiss McKing's Procurement Integrity Act claim, and dismiss the complaint.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-2377
Facsimile: (202) 305-7643
Steven.mager@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

MICHAEL I. GOULDING
Attorney
Office of General Counsel
Department of Health and
Human Services

April 6, 2007

CERTIFICATE OF FILING

I hereby certify that on April 6, 2007, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL BRIEF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice